Dillon E. Jackson, WSBA #1539
Foster Pepper PLLC
1111 Third Avenue, Suite 3400
Seattle, WA  98101-3299
(206) 447-8962
(206) 749-1959
jackd@foster.com
Pro Hac Vice

Irving Potter
Josselson & Potter
9400 SW Bvtn-Hisdl Hwy
Beaverton, OR 97005
(503) 228-1455
Fax (503) 228-0171
irving@jprlaw.com

Attorneys for Debtor in Possession
Kartar Singh Khalsa

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>KARTAR SINGH KHALSA and<br>EWTC MANAGEMENT, LLC,<br>f/k/a Golden Temple Management, LLC,<br><br>Debtors. | Case No. 12-60538-fra11 and<br>            12-60536-fra11<br><br>(Jointly Administered) |
| KARTAR SINGH KHALSA and<br>EWTC MANAGEMENT, LLC,<br>f/k/a Golden Temple Management, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>LANE POWELL PC,<br><br>Defendant. | **Adv. Proc No.**<br><br>**COMPLAINT ON OBJECTION TO<br>CLAIM OF LANE POWELL PC**<br><br>**JURY DEMAND (RESERVED)** |

Kartar Singh Khalsa ("Kartar") and EWTC Management, LLC, ("EWTC") f/k/a Golden

Temple Management, LLC, allege as follows:

COMPLAINT ON OBJECTION TO CLAIM - 1

# I. PARTIES.

**1.1 Kartar Singh Khalsa.**

Kartar is an individual debtor in case no. 12-60538-fra11 residing in Portland Oregon. Kartar is a member of EWTC Management LLC.  Kartar and EWTC confirmed a Joint Plan of Reorganization on December 14, 2012.

**1.2 EWTC Management, LLC.**

EWTC f/k/a/ Golden Temple Management, LLC was 90% owner of the East West Tea Company, LLC, formally known as Golden Temple of Oregon and its operations were located in Springfield, Oregon with offices in Portland, Oregon.  EWTC and Kartar confirmed a Joint Plan of reorganization on December 14, 2012.

**1.3 Lane Powell PC.**

Lane Powell PC ("Lane Powell") is an Oregon professional services corporation with offices in Oregon, Washington, Alaska and London, England.   Lane Powell has filed a duplicate administrative claim against both Debtors in these cases.

# II. JURISDICTION AND VENUE.

**2.1 Jurisdiction.**

This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §1334.

**2.2 Core Proceeding.**

The disallowance or allowance of the disputed claim is a core proceeding pursuant to 11 U.S.C. §157(b).

**2.3 Venue.**

Venue is proper in this district pursuant to 28 U.S.C. 1409.

**2.4 Consent to Entry of Final Order by Bankruptcy Court.**

Plaintiffs consents to entry of a final order on the disallowance or allowance of the Lane Powell claim.  Plaintiffs do not consent to entry of a final order on its claim against Lane Powell for professional negligence.

COMPLAINT ON OBJECTION TO CLAIM - 2

## III. PRECLUSION AND EXCLUSION.

**3.1 No Preclusion.**

In the event that the Court approves any part of the Lane Powell fee application, such approval will not preclude  the malpractice claim against Lane Powell because the malpractice claim does not arise from the post petition acts of the firm including the professional services for which payment is alleged to be due.

## IV. EXCLUSION.

While the malpractice claim is a claim against Lane Powell's fee demand made in the bankruptcies, it is not a compulsory counter claim because it does not arise out of the same acts or events. See, Fed. R. Bankr. P. 7013.

The Court should not adjudicate the malpractice counterclaim.  In the event the Court rules otherwise, this complaint will be amended and a motion to withdraw the reference would likely be filed by one or both sides to this dispute.

## V. JURY DEMAND (RESERVED)

In the event that the Court rules that the malpractice counterclaim will not be addressed in this case the jury demand herein will be stricken.

## VI. PROCEDURE.

**6.1 Claim.**

On January 29, 2013 Lane Powell filed Claim 24 against both Debtors for $286,554.00 in fees and $1896.96 in costs for a total of $298,450.96.   The claim includes a statement that $10,000 of the fees claimed was estimated.  The claim filed is identical for both Debtors and makes no effort to apportion the services between the alleged clients.

**6.2 Order for Adversary Proceeding.**

The claim was objected to and a scheduling conference and scheduling order was entered on March 13, 2013.  The scheduling order provides that the objection be cast in the form of a complaint.

COMPLAINT ON OBJECTION TO CLAIM - 3

# VII. PROCEEDINGS.

**7.1 Filing of Cases.**

On February, 18, 2012 EWTC Management, LLC then known as Golden Temple Management, LLC filed its petition under chapter 11, case number 12-60536-fra11. On the same date, Kartar Singh Khalsa filed his chapter 11 cases under case number 12060538-fra11.

**7.2 Cases Proceeded Separately.**

EWTC hired its professionals, Winston & Cashatt, of Spokane, Washington and Albert & Tweet, of Salem, Oregon by application filed February 21, 2012.

Kartar hired his professionals, Foster Pepper PLLC of Seattle, Washington and Josselson & Potter of Portland, Oregon by applications filed on February 21, 2012.

**7.3 Lane Powell Applications for Employment.**

On June 15, 2012 on application, an order was entered approving employment of Lane Powell as special counsel for EWTC.

On June 27, 2012 an application was filed for employment of Lane Powell as special counsel for Kartar. An objection to the Application was filed and no order for their employment was entered in the Kartar Singh Khalsa case.

**7.4 Notice List.**

Lane Powell received notice of all proceedings in these cases including those referenced in this Complaint.

**7.5 Mediation and Settlement.**

In August of 2012, after many meetings with the mediators and negotiations among the parties. EWTC, Kartar and a number of non-debtor entities negotiated a global settlement. After some weeks delay in drafting the definitive agreement, the settlement was noticed out in each of the EWTC and Kartar cases with the motion and copy of the Settlement Agreement to all notice parties for court approval. The Settlement Agreement provides for certain cooperation and sharing of recoveries with regard to "Malpractice Claims." Malpractice Claims are defined as "malpractice and other claims against attorneys, accountants, appraisers and other professionals

COMPLAINT ON OBJECTION TO CLAIM - 4

(including, but not limited to, Schwabe, Williamson & Wyatt, Roy Lambert, Lane Powell and Cogence Group) concerning, related to or arising from the Transaction. " Settlement Agreement § 2.t.

**7.6 Settlement Agreement Approved.**

Motions to approve the Settlement Agreement and related settlements where filed by the Debtors in both cases.  Hearings on the approval of the Settlement in the two cases were consolidated into a single hearing.  On November 8, 2012 after hearing, the Court entered an Order Approving the Settlement in the Kartar case.  [Docket 275].  On November 9, 2012 the Court entered an Order Approving the Settlement in the EWTC case.  [Docket 237].

**7.7 Plan and Disclosure Statement.**

On November 13, 2012 the Debtors filed their Amended Joint Plan of Reorganization (the "Plans") and Disclosure Statement in each of their cases. The Court entered an Order approving the Disclosure Statements on that date.

**7.8 Dispute Disclosed.**

The Disclosure Statements specifically stated that the claim filed by Lane Powell and any administrative claim was disputed.  The Disclosure Statement also referenced the malpractice claim recovery sharing provisions in the Settlement.

**7.9 Report of Administrative Expenses.**

On December 7, 2012, Kartar at Docket #306 and EWTC at Docket #266 filed LBF #1182 as required by Local Bankruptcy Rule 3020-1(a), setting forth the administrative expenses for the cases including professional fees.  The reports list Foster Pepper, Josselson & Potter, Winston Cashatt, Albert & Tweet and Ford Elsaesser.  The reports do not mention Lane Powell. Lane Powell did not file an objection or communicate an objection to this report informally.

**7.10 Confirmation.**

On December 14, 2012 the Court entered its Orders Confirming the First Amended Joint Plan filed by the Debtors in each of the cases.

COMPLAINT ON OBJECTION TO CLAIM - 5

**7.11 No Substantive Consolidation.**

The Plans specifically provide that there is no substantive consolidation of the two cases and provide that each debtor pay its own allowed claims including those of their separate counsel.

**7.12 Joint Administration.**

On December 14, 2012 the Court entered an Order for Joint Administration of the EWTC and Kartar cases.  The order did not provide for substantive consolidation.

**7.13 No Objection.**

Lane Powell filed no objections to the Settlement, Disclosure Statement content or the Plans and provided no information on its administrative claim to the Debtors before or after the reports on administrative expenses.  Lane Powell did not object to confirmation. The effective date of the Plans was December 28, 2012.

**7.14 Administrative Claim.**

On January 28, 2013, the last day for the filing of costs of administration claims, Lane Powell filed the claim which is in dispute herein and referenced above.  The claim form stated that Lane Powell's employment had been approved and did not disclose that at no time had their employment been approved in the Kartar case.

**7.15 Application Withdrawn.**

As an initial part of the claim objection herein Kartar withdrew his application for employment of Lane Powell on 1/30/2013.

**7.16 Order for Employment Nunc Pro Tunc.**

On January 29, 2013 purporting to have authority from EWTC to do so, Lane Powell filed a Motion ("the Nunc Pro Tunc Motion ") to expand its period of employment and eligibility for compensation by EWTC nunc pro tunc to the date of the filing of the case.  Lane Powell then improperly submitted and Order granting the Nunc Pro Tunc Motion for <u>both</u> Kartar and EWTC on February 26, 2013. The Order was submitted after the withdrawal of the application to employ Lane Powell filed on January 30, 2013.  The Order granted relief which was not sought

COMPLAINT ON OBJECTION TO CLAIM - 6

in the Motion and supported by the record.  Neither the Motion nor the content of the Order was approved by Kartar or his representatives.

**7.17 Objection to Claim.**

On February 26, 2013 EWTC and Kartar each filed objection to the claim of Lane Powell in their cases supplementing their withdrawal of the application to employ Lane Powell filed earlier.

**7.18 Motion to Vacate.**

Kartar filed a Motion to Vacate the Nunc Pro Tunc Order on March 4, 2013. The Motion to Vacate has not been heard and is now incorporated and made part of this case.

**7.19 Pre-Petition Claim.**

Lane Powell filed a prepetition claim in the cases which was objected to and ultimately settled with payment from the CNA insurance fund trust.  Settlement and payment was without waiver of any defenses or claims of either of the parties.  No inference is to be drawn in this case from the settlement.

## VIII. BACKGROUND.

**8.1 2007 Transaction.**

In 2007, a transaction was closed in which majority ownership of Golden Temple of Oregon (now East West Tea Company) (the "Tea Company") was transferred to Golden Temple Management (now EWTC Management LLC) ("EWTC").   Lane Powell represented the purchaser in the 2007 Transaction.  The Tea Company and EWTC may also be referred to as "GTO" and "GTM" respectively in certain documents, emails and time records.

**8.2 Private Plaintiffs Litigation.**

In 2009, a group of individuals connected with the prior owner of the Tea Company (the "Private Plaintiffs") commenced litigation attacking the transfer.  This case proceeded in Oregon state court before Judge Leslie Roberts.   In that litigation Lane Powell represented the Tea Company and other defendants.

COMPLAINT ON OBJECTION TO CLAIM - 7

**8.3 Representation of Tea Company.**

After the 2007 Transaction Lane Powell represented the Tea Company in numerous business and litigation matters billing and receiving several million dollars in legal fees.

**8.4 Insurance Trusts.**

Certain of the fees paid to Lane Powell and other counsel we paid from insurance recoveries.  Under agreements with the insurers, funds were placed in the trust account of Lane Powell and distributed for legal expenses in accordance with the agreements relating to those trusts.

**8.5 Representation of Kartar.**

Prior to the bankruptcy filings, Lane Powell represented and billed Kartar separately on certain matters.

## IX. FACTS.

**9.1 Prior Representation by Lane Powell.**

Lane Powell represented Golden Temple of Oregon, EWTC and Kartar in the litigation that beset the companies including litigation brought the Private Plaintiffs and litigation with the Bibiji family.   There was also other litigation relating to sale of the cereal division of the Tea Company and intellectual property disputes in which Lane Powell represented the Tea Company.

**9.2 Conflict.**

In late 2011, prior to the filing of these cases, Lane Powell informed the members of EWTC and Kartar that it had a conflict and directed them to employ separate counsel.  Kartar employed Irving Potter and the other EWTC members employed Michael Farnell.  From that time forward and post petition, Potter and Farnell represented their respective clients in the state court litigation with the Private Plaintiffs pending before Judge Leslie Roberts.   Potter and Farnell represented the Debtors in the initial mediation session with Judge Hogan with continued mediation through the approval of the Settlement Agreement with Potter, Farnell and bankruptcy counsel, Dillon Jackson, Nancy Iserliss, John Albert and Steven Sweet representing the Debtor entities.

COMPLAINT ON OBJECTION TO CLAIM - 8

### 9.3 Inadequate Disclosure.

Lane Powell's fee application papers recite various representations, but do not adequately disclose the conflicts of interest in the case.  One conflict that was not disclosed at all was its own interest in defending the 2007 Transaction in which it represented the buyer.

### 9.4 Lack of Waivers or Disclosure of Waivers

Lane Powell did obtain some waivers of conflicts but such waivers were not disclosed in, or attached to their employment pleadings.

### 9.5 Bar to Providing Services.

On occasion during the course of the cases, Lane Powell counsel indicated they could not give advice, analysis or information because of a conflict of interest among the various entities it claims to have represented.

### 9.6 Mediation.

Lane Powell representatives did not attend most of the mediation sessions with the Private Plaintiffs and did not materially contribute to the negotiations and the Settlement reached in August 2012.

### 9.7 Bibiji Suit Conflict.

On March 13, 2012 by amended complaint Lane Powell was named as a defendant by the Bibiji family in the federal court case filed before U.S. District Court Judge Mossman in Portland Case No. 3:10-cv-01532 MO.    In that matter Lane Powell was conflicted in defending its own interests possibly to the prejudice of the other defendants that it represented.  The fact that Lane Powell was sued in that case was disclosed, but the inherent conflict created by the claim therein was not adequately revealed in Lane Powell's employment pleadings, or supplement.  In fact. a conflict existed as Lane Powell was again placed in the position of defending its advice and role in the 2007 Transaction.

COMPLAINT ON OBJECTION TO CLAIM - 9

**9.8 No Employment by Kartar.**

At no time after the filing of the cases was Lane Powell employed by Kartar. Prior to the bankruptcy filing, other than personal planning matters that were completed prior to filing, Lane Powell represented and billed the corporate and LLC entities.

**9.9 Failure to Differentiate Between the Debtors.**

In its pleadings and billings Lane Powell consistently conflates EWTC and Kartar as if they were a single entity. No bills were separately sent to Kartar and in the time records submitted in this matter as well as in the employment pleadings there is no attempt to differentiate the alleged services for Kartar and those alleged to have been performed for EWTC.

**9.10 Tea Company Share of Billing Not Explained.**

Despite representation of the Tea Company in these matters Lane Powell has allocated no part of their claim to that entity, but rather purports to place the entire obligation on these Debtors.

**9.11 No Allocation for Work in its Own Self Interest.**

The billing statements submitted with the fee application reveal no application of time or billing to Lane Powell itself for pursuit of its own interests in the Private Plaintiff and Bibiji litigation.

**9.12 Retention Agreements.**

On information and belief there are no retention letters or other agreements that provide that Kartar, the Tea Company and EWTC or some combination thereof are jointly and severally liable for Lane Powell fees.

**9.13 Pre-petition Claim Bills.**

The prepetition claim bills for Claim 18 in 12-60538 and Claim 22 in 12-60538 were filed in both cases. However, the billings attached to the claims were billed to, and directed to EWTC.

COMPLAINT ON OBJECTION TO CLAIM - 10

**9.14 No Statements Sent to Debtors on Alleged Administrative Work.**

Neither Kartar nor EWTC received statements, bills or information on the very significant accumulating bills being incurred by Lane Powell from the filing of these cases until January 28, 2013. As a result neither Debtor was able to supervise, budget nor direct the efforts of Lane Powell and the alleged services ran unchecked and proceeded without restraint.

**9.15 Failure to Keep Client Informed of Case and Billings is Improper.**

The Oregon Code of Professional Responsibility including without limitation § 1.4, requires that counsel keep its client informed of material events occurring during the representation so as to allow the client to make informed decisions on the representation. Lane Powell's failure to regularly and timely inform the Debtor of the magnitude of their charges is a violation of a professional duty of counsel.

**9.16 No Notification to Counsel.**

At no time before January 28, 2013, did Lane Powell inform the debtors or the law firms representing the Debtors that they had run up an administrative professional fee claim approaching $300,000.

**9.17 Hourly Rates Exceed Amounts in Application.**

The claim submitted for payment and time records accompanying the claim are for each professional calculated on hourly rates in excess of the rates stated in their June 2012 Application. Further other professionals at much higher hourly rates than the highest rates identified in the June Application billed time in the claim. The highest rate quoted to the Court in the Application was $463.50/hr. The fees claimed now include time for Lewis Horowitz at $600/hr and Neil Kimmelfield at $575/hr.

## X. TIME ENTRIES.

The time entries submitted with the Lane Powell claim are replete with redactions; contain omissions of the subject matter, parties or identification of court or hearing location. With out discovery the actual services rendered are impossible to properly review. However pending discovery certain observations are possible.

COMPLAINT ON OBJECTION TO CLAIM - 11

**10.1 Double and Triple Teaming.**

It appears that on many occasions multiple members of the firm were present at court hearings which should have been handled by a single attorney.  For example, but not the only incident, was the Time billed on April 27. 2012.

**10.2 Multiplicity of Lawyers Generally.**

Lane Powell had 10 lawyers and 4 paralegals billing in this case.  The shear number of professionals on the case resulted in numerous communications simply to coordinate what appears to have been an unnecessary, unwieldy and duplicative performance.  The six lawyer internal meeting on June 18, 2012 at an apparent cost of $4400 is an example.

**10.3 Bankruptcy Work.**

Despite the fact that the Debtors each had principal and local bankruptcy counsel, substantial time was expended on bankruptcy related matters.  This effort was duplicative and unnecessary, but reflects the lack or restraint that characterizes the time in the submission.  Lane Powell filed no pleadings, joinders or briefs. in either of the two bankruptcy cases except those related to their claims.  Total time for bankruptcy work not within the contemplation of the application exceeded $21,000.

**10.4 Bankruptcy Monitoring.**

Excessive time by Lane Powell counsel is expended in monitoring, analyzing and reporting to the many other professionals in the firm about the events in the bankruptcy.

**10.5 Tax Work.**

The tax work performed by Lane Powell is obscured by their submission which places tax research and many internal conferences on tax in multiple separate matters in the submission.  Alleged to be $25,940.00, the actual amount is more akin to $40,000.  Either amount was excessive and duplicative and in great part billed at higher rates than disclosed to the Court.

**10.6 Appeal.**

The appeal work performed by Lane Powell expending $113,000 in lawyers time, was excessive.  The appeal effort was duplicative of other parties who had stronger grounds and both

COMPLAINT ON OBJECTION TO CLAIM - 12

`sets of appeals failed completely. The effort (for mandamus) had a very low chance of success and would not have been authorized had the client been aware of the cost. The statement that the appeal work was a consideration and aided in the settlement reached in August, 2012 is puffery. Achievement of the settlement was the result of other factors. The principal factor was the inability of the state or federal courts to change the governance of the religious body affiliated with the Tea Company and related to the litigation. In any event the work far exceeded any reasonable cost for the work and as stated was a complete failure. Review of the time records reveals significant duplication of effort and inefficiencies in brief writing and endless revisions, research and review by multiple counsel.

### 10.7 Fee Application.

The $31,000 for fee application work is completely unjustified and far in excess of the standard in bankruptcy cases. Further the time records reflect substantial time in dealing with waiver of conflicts of interest which are not specifically identified and will be better understood with discovery. Further there is substantial time spent preparing fee applications for interim payment which were never submitted.

### 10.8 Employment Application.

Time on the fee application submission alone shows a final entry on June 26, 2012. At that time the entries for the fee applications had accumulated to $12,300.

### 10.9 No Payment Applications.

Lane Powell's employment was approved in EWTC. Time records indicate that preparation of interim payment applications commenced immediately on June 27, 2012. Time records for efforts to prepare, discuss and submit interim fee applications consumed the remainder of the $31,047, 50 (or $18,750) claimed in employment and payment efforts. Of course had the interim fee applications been submitted, the client would have been aware of the fee burn that was occurring and could have exercised the informed supervision contemplated by the Oregon Rules of Professional Conduct.

COMPLAINT ON OBJECTION TO CLAIM - 13

**10.10 Payment Protocol.**

Payment of Lane Powell pre filing and payment of bankruptcy counsel in large part was sourced from the insurance trust accounts held at Lane Powell.  Until that last distribution of those funds in 2013, funds were available for payment of interim fees.

## XI. RELIEF SOUGHT.

**11.1 Vacation and Correction of the Nunc Pro Tunc Order Entered on February 26, 2013.**

Kartar seeks vacation or correction of the nunc pro tunc order entered in this case.  The Motion on which the Order was based does not seek an Order in his case and falsely states that Lane Powell had been approved as counsel in his case.

**11.2 Claim Disallowed.**

Claim should be disallowed as a claim or administrative claim in case No 12-60538.

Claim should also be disallowed due to waiver, latches and inequitable conduct in case 12-60536 and as an additional basis in case 12-60538 due to the failure to communicate the claim to the debtor or counsel at the critical stages of the case, including at time of the plan and disclosure statement submission and confirmation and at the time of submission of the administrative expenses report.

**11.3 Claim Reduced.**

As to the claim in case number 12-60536, the Lane Powell claims should be substantially reduced and subject to further proof and review to occur at trial, the claim against EWTC in its entirety should be reduced to $50,000.

**11.4 Loss of Priority Rights.**

The Court should rule that by its failure to assert a claim in the cases prior to the confirmation hearing Lane Powell has waived its right to treatment as an administrative claim under the Plans.  Specifically, failure to pay any allowed amount promptly upon allowance shall not constitute a default under the plan and the claim may be paid 100% of the allowed amount as provided for unsecured creditors.

COMPLAINT ON OBJECTION TO CLAIM - 14

**11.5 Disallowance of Further Fees.**

The Court should disallow any further fees incurred in the filing of Lane Powell claims or pursuit of this action.

**11.6 Amendment Reserved.**

Complainants reserve the right to amend this complaint in accordance with the rulings of this court and the facts determined on discovery in this case.

**11.7 Additional Relief.**

The Court should award such additional relief as it deems appropriate and in the interests of justice.

DATED this 3rd day of April, 2013.


FOSTER PEPPER PLLC


*/s/ Dillon E. Jackson*
Dillon E. Jackson, WSBA #1539
Pro Hac Vice
Attorneys for Debtor
Kartar Singh Khalsa


JOSSELSON & POTTER

*/s/ Irving Potter*
Irving Potter OSB # 742609

Attorneys for Kartar Singh Khalsa


COMPLAINT ON OBJECTION TO CLAIM - 15