Dillon E. Jackson, WSBA #1539
Foster Pepper PLLC
1111 Third Avenue, Suite 3400
Seattle, WA 98101-3299
(206) 447-8962
(206) 749-1959
jackd@foster.com
Pro Hac Vice

Irving Potter
Josselson & Potter
9400 SW Bvtn-Hisdl Hwy
Beaverton, OR 97005
(503) 228-1455
Fax (503) 228-0171
irving@jprlaw.com

Attorneys for Debtor in Possession
Kartar Singh Khalsa

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br><br>KARTAR SINGH KHALSA and<br>EWTC MANAGEMENT, LLC,<br>f/k/a Golden Temple Management, LLC,<br><br>                Debtors. | Case No. 12-60538-fra11 and<br>            12-60536-fra11<br><br>(Jointly Administered) |
| KARTAR SINGH KHALSA and<br>EWTC MANAGEMENT, LLC,<br>f/k/a Golden Temple Management, LLC,<br><br>                Plaintiffs,<br><br>      v.<br><br>LANE POWELL PC,<br><br>                Defendant. | **Adv. Proc No. 13-06040-fra**<br><br><br>**STATEMENT OF OBJECTIONS TO<br>CLAIM 24 OF LANE POWELL PC** |

      Kartar Singh Khalsa ("Kartar") and EWTC Management, LLC, ("EWTC") f/k/a Golden

Temple Management, LLC, allege as follows:

CLAIM OBJECTION - 1

# I. PARTIES.

**1.1 Kartar Singh Khalsa.**

Kartar is an individual debtor in case no. 12-60538-fra11 residing in Portland Oregon. Kartar is a member of EWTC Management LLC.  Kartar and EWTC confirmed a Joint Plan of Reorganization on December 14, 2012.

**1.2 EWTC Management, LLC.**

EWTC f/k/a/ Golden Temple Management, LLC was 90% owner of the East West Tea Company, LLC, formally known as Golden Temple of Oregon and its operations were located in Springfield, Oregon with offices in Portland, Oregon.  EWTC and Kartar confirmed a Joint Plan of reorganization on December 14, 2012.

**1.3 Lane Powell PC.**

Lane Powell PC ("Lane Powell") is an Oregon professional services corporation with offices in Oregon, Washington, Alaska and London, England.   Lane Powell has filed a duplicate administrative claim against both Debtors in these cases.

# II. PROCEDURE.

**2.1 Claim.**

On January 29, 2013 Lane Powell filed Claim 24 against both Debtors for $286,554.00 in fees and $1896.96 in costs for a total of $298,450.96.  The claim includes a statement that $10,000 of the fees claimed was estimated.  The claim filed is identical for both Debtors and makes no effort to apportion the services between the alleged clients.

**2.2 Order for Adversary Proceeding.**

The claim was objected to and a scheduling conference and scheduling order was entered on March 13, 2013.  The scheduling order provides that the objection be cast in the form of a complaint.  At a later Scheduling Conference on May 17, 2013 the Court ruled that the matter would go forward as a claim objection under the 9000 series of the Bankruptcy Rules, but would be retained in this adversary case.

CLAIM OBJECTION - 2

**2.3 Amendment.**

Following receipt of the initial objection to its January 29th claim which demanded that Lane Powell adhere to the hourly rates disclosed to the Court, Lane Powell filed an amended claim reducing its initial administrative claim.

**2.4 Claim 18 Settled.**

Lane Powell also filed a claim for pre petition services in both debtors' cases. (Claim 18 in case 12-60538). The objection to this claim was settled and satisfied in full.

### III. BACKGROUND.

**3.1 Filing of Cases.**

On February, 18, 2012 EWTC Management, LLC then known as Golden Temple Management, LLC filed its petition under chapter 11, case number 12-60536-fra11. On the same date, Kartar Singh Khalsa filed his chapter 11 case under case number 12-60538-fra11.

**3.2 Cases Proceeded Separately.**

EWTC hired its professionals, Winston & Cashatt, of Spokane, Washington and Albert & Tweet, of Salem, Oregon by application filed February 21, 2012.

Kartar hired his professionals, Foster Pepper PLLC of Seattle, Washington and Josselson & Potter of Portland, Oregon by applications filed on February 21, 2012.

**3.3 Lane Powell Applications for Employment.**

On June 15, 2012 on application, an order was entered approving employment of Lane Powell as special counsel for EWTC.

On June 27, 2012 an application was filed for employment of Lane Powell as special counsel for Kartar. An objection to the Application was filed and no order for their employment was entered in the Kartar Singh Khalsa case until January 2013. That order is contested by Kartar.

**3.4 Notice List.**

Lane Powell received notice of all proceedings in these cases including those referenced in this Complaint.

CLAIM OBJECTION - 3

**3.5 Mediation and Settlement.**

In August of 2012, after many meetings with the mediators and negotiations among the parties. EWTC, Kartar and a number of non-debtor entities negotiated a global settlement.

**3.6 Settlement Agreement Approved.**

Motions to approve the Settlement Agreement and related settlements where filed by the Debtors in both cases. Hearings on the approval of the Settlement in the two cases were consolidated into a single hearing. On November 8, 2012 after hearing, the Court entered an Order Approving the Settlement in the Kartar case. [Docket 275]. On November 9, 2012 the Court entered an Order Approving the Settlement in the EWTC case. [Docket 237].

**3.7 Plan and Disclosure Statement.**

On November 13, 2012 the Debtors filed their Amended Joint Plan of Reorganization (the "Plans") and Disclosure Statement in each of their cases. The Court entered an Order approving the Disclosure Statements on that date.

**3.8 Dispute Disclosed.**

The Disclosure Statements specifically stated that the claim filed by Lane Powell and any administrative claim was disputed.

**3.9 Report of Administrative Expenses.**

On December 7, 2012, Kartar at Docket #306 and EWTC at Docket #266 filed LBF #1182 as required by Local Bankruptcy Rule 3020-1(a), setting forth the administrative expenses for the cases including professional fees. The reports list Foster Pepper, Josselson & Potter, Winston Cashatt, Albert & Tweet and Ford Elsaesser. The reports do not mention Lane Powell. Lane Powell did not file an objection or communicate an objection to this report informally.

**3.10 Confirmation.**

On December 14, 2012 the Court entered its Orders Confirming the First Amended Joint Plan filed by the Debtors in each of the cases.

CLAIM OBJECTION - 4

**3.11 No Substantive Consolidation.**

The Plans specifically provide that there is no substantive consolidation of the two cases and provide that each debtor pay its own allowed claims including those of their separate counsel.

**3.12 Joint Administration.**

On December 14, 2012 the Court entered an Order for Joint Administration of the EWTC and Kartar cases.  The order did not provide for substantive consolidation.

**3.13 No Objection.**

Lane Powell filed no objections to the Settlement, Disclosure Statement content or the Plans and provided no information on its administrative claim to the Debtors before or after the reports on administrative expenses.  Lane Powell did not object to confirmation. The effective date of the Plans was December 28, 2012.

**3.14 Administrative Claim.**

On January 28, 2013, the last day for the filing of costs of administration claims, Lane Powell filed the claim which is in dispute herein and referenced above.  The claim form stated that Lane Powell's employment had been approved and did not disclose that at the time their employment had not been approved in the Kartar case.

**3.15 Application Withdrawn.**

As an initial part of the claim objection herein Kartar withdrew his application for employment of Lane Powell on 1/30/2013.

**3.16 Order for Employment Nunc Pro Tunc.**

On January 29, 2013 purporting to have authority from EWTC to do so, Lane Powell filed a Motion ("the Nunc Pro Tunc Motion ") to expand its period of employment and eligibility for compensation by EWTC nunc pro tunc to the date of the filing of the case.  Lane Powell then improperly submitted an Order granting the Nunc Pro Tunc Motion for <u>both</u> Kartar and EWTC on February 26, 2013.  The Order granted relief which was not sought in the Motion and supported by the record.  Neither the Motion nor the content of the Order was approved by

CLAIM OBJECTION - 5

Kartar or his representatives.  Lane Powell did not inform the principals of EWTC that they intended to file the Nunc Pro Tunc motion.

**3.17 Objection to Claim.**

On February 26, 2013 EWTC and Kartar each filed objections to the claim of Lane Powell in their cases supplementing their withdrawal of the application to employ Lane Powell filed earlier.

**3.18 Motion to Vacate.**

Kartar filed a Motion to Vacate the Nunc Pro Tunc Order on March 4, 2013. The Motion to Vacate was denied but a motion for reconsideration is pending.

**3.19 Pre-Petition Claim.**

Lane Powell filed a prepetition claim in the cases which was objected to and ultimately settled with payment from the CNA insurance fund trust.  Settlement and payment was without waiver of any defenses or claims of either of the parties.  No inference is to be drawn in this case from the settlement.

**3.20 Representation of Kartar.**

Prior to the bankruptcy filings, Lane Powell represented and billed Kartar separately on certain matters unrelated to this dispute.

## IV. FACTS.

**4.1 Prior Representation by Lane Powell.**

Lane Powell represented Golden Temple of Oregon, EWTC and Kartar in the litigation that beset the companies including litigation brought by the Private Plaintiffs and litigation with the Bibiji family.  There was also other litigation relating to the sale of the cereal division of the Tea Company and intellectual property disputes in which Lane Powell represented the Tea Company.

**4.2 Conflict.**

In late 2011, prior to the filing of these cases, Lane Powell informed the members of EWTC and Kartar that it had a conflict and directed them to employ separate counsel.  Kartar

CLAIM OBJECTION - 6

employed Irving Potter ("Potter") and the other EWTC members employed Michael Farnell ("Farnell").  From that time forward and post petition, Potter and Farnell represented their respective clients in the state court litigation with the Private Plaintiffs pending before Judge Leslie Roberts.  Potter and Farnell represented the Debtors in the initial mediation session with Judge Michael Hogan with continued mediation through the approval of the Settlement Agreement with Potter, Farnell and bankruptcy counsel, Dillon Jackson, Nancy Iserliss, John Albert and Steven Sweet representing the Debtor entities.

### 4.3 Inadequate Disclosure.

Lane Powell's fee application papers recite various representations, but do not adequately disclose the conflicts of interest in the case.  One conflict that was not disclosed at all was its own interest in defending the 2007 Transaction in which it represented the buyer.

### 4.4 Lack of Waivers or Disclosure of Waivers

Lane Powell did obtain some waivers of conflicts but such waivers were not disclosed in, or attached to their employment pleadings.

### 4.5 Bar to Providing Services.

On occasion during the course of the cases, Lane Powell counsel indicated they could not give advice, analysis or information because of a conflict of interest among the various entities it claims to have represented including the debtors herein.

### 4.6 Mediation.

Lane Powell representatives did not attend most of the mediation sessions with the Private Plaintiffs and did not materially contribute to the negotiations and the Settlement reached in August 2012.

### 4.7 Bibiji Suit Conflict.

On March 13, 2012 by amended complaint Lane Powell was named as a defendant by the Bibiji family in the federal court case filed before U.S. District Court Judge Mossman in Portland Case No. 3:10-cv-01532 MO.   In that matter Lane Powell was conflicted in defending its own interests possibly to the prejudice of the other defendants that it represented.  The fact

CLAIM OBJECTION - 7

that Lane Powell was sued in that case was disclosed, but the inherent conflict created by the claim therein was not adequately revealed in Lane Powell's employment pleadings, or supplement.  In fact, a conflict existed as Lane Powell was again placed in the position of defending its advice and role in the 2007 Transaction.  Post petition legal work in the case related almost exclusively to obtaining dismissal of Lane Powell as a defendant in the Bibiji suit.

**4.8 No Employment by Kartar.**

At no time after the filing of the cases through the effective date of the confirmed Joint Plan was Lane Powell employed by Kartar.  Prior to the bankruptcy filing, other than personal planning matters that were completed prior to filing, Lane Powell represented and billed the corporate and LLC entities.  All Lane Powell records indicate that the time accrued and now claimed in these cases were directed at EWTC.

**4.9 Failure to Differentiate Between the Debtors.**

In its pleadings and billings Lane Powell consistently conflates EWTC and Kartar as if they were a single entity.  No bills were separately sent to Kartar and in the time records submitted in this matter as well as in the employment pleadings there is no attempt to differentiate the alleged services for Kartar and those alleged to have been performed for EWTC.

**4.10 Tea Company Share of Billing Not Explained.**

Despite representation of the Tea Company in these matters, Lane Powell has allocated no part of their claim to that entity, but rather purports to place the entire obligation on these Debtors.

**4.11 No Allocation for Work in its Own Self Interest.**

The billing statements submitted with the fee application reveal no application of time or billing to Lane Powell itself for pursuit of its own interests in the Private Plaintiff and Bibiji litigation.

CLAIM OBJECTION - 8

**4.12 Retention Agreements.**

There are no retention letters or other agreements that provide that Kartar, the Tea Company and EWTC or some combination thereof are jointly and severally liable for Lane Powell fees.

**4.13 Pre-petition Claim Bills.**

The prepetition claim bills for Claim 18 in 12-60538 and Claim 22 in 12-60538 were filed in both cases. However, the billings attached to the claims were billed to, and directed solely to EWTC.

**4.14 No Statements Sent to Debtors on Alleged Administrative Work.**

Neither Kartar nor EWTC received statements, bills or information on the very significant accumulating bills being incurred by Lane Powell from the filing of these cases until January 28, 2013. As a result, neither Debtor was able to supervise, budget nor direct the efforts of Lane Powell and the alleged services ran unchecked and proceeded without restraint.

**4.15 Failure of Full Disclosure with Nunc Pro Tunc Applications.**

By the date of the initial applications for employment in the cases the outstanding balance for services to date was not disclosed where in fact approximately two thirds of the charges were already in Lane Powell's undisclosed time records by that date. Failure to provide this critical information was a material undisclosed fact.

**4.16 Failure to Keep Client Informed of Case and Billings is Improper.**

The Oregon Code of Professional Responsibility including without limitation § 1.4, requires that counsel keep its client informed of material events occurring during the representation so as to allow the client to make informed decisions on the representation. Lane Powell's failure to regularly and timely inform the Debtor of the magnitude of their charges is a violation of a professional duty of counsel.

CLAIM OBJECTION - 9

**4.17 Time Records Show No Client Conferences.**

Failure to keep the client apprised of its work and its mounting claim is exacerbated by the lack of adequate client communications confirmed by the time records submitted with the claim.

**4.18 No Notification to Counsel.**

At no time before January 28, 2013, did Lane Powell inform the debtors or the law firms representing the Debtors that they had run up an administrative professional fee claim approaching $300,000.

**4.19 Hourly Rates Exceed Amounts in Application.**

The claim submitted for payment and time records accompanying the claim are for each professional calculated on hourly rates in excess of the rates stated in their June 2012 Application. Further other professionals at much higher hourly rates than the highest rates identified in the June Application billed time in the claim. The highest rate quoted to the Court in the Application was $463.50/hr. The fees claimed now include time for Lewis Horowitz at $600/hr and Neil Kimmelfield at $575/hr. This violation of the representations to the court has been recently addressed in an amendment of the Lane Powell claim.

**4.20 Failure to Meet the Requirements Compensation under 11 U.S.C. §330.**

This Court has authority to grant "reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person." The Court shall not approve payment for **(i)** unnecessary duplication of services; or **(ii)** services that were not—(1) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case. The fee application in dispute here fails to meet the statutory criteria because of the facts set forth herein, including without limitation that the charges were excessive, certain charges were unnecessary or wasteful, were not timely disclosed and involved services that were not beneficial to the estate.

CLAIM OBJECTION - 10

**4.21 Charges for Defense of a Faulty Fee Application Should Be Disallowed.**

The applicant has already been obliged to amend its claim as a result of the objection by the debtors.  The charges for preparation of the fee applications in this case were for applications not filed and for the final application filed were excessive.  A reasonable charge may be allowed under §330, but payment for fees in defense of the application are not payable where the objection is well taken, results in a reduction and is prosecuted in good faith.  Any attempt to obtain compensation for defense of the fee application in this case should be disallowed.

## V. TIME ENTRIES.

The time entries initially submitted with the Lane Powell claim were replete with redactions; contain omissions of the subject matter, parties or identification of court or hearing location.  Without discovery the actual services rendered are impossible to properly review.  However, pending discovery, certain observations are possible.

**5.1 Double and Triple Teaming.**

It appears that on many occasions multiple members of the firm were present at court hearings which should have been handled by a single attorney.  For example, but not the only incident, was the time billed on April 27. 2012.

**5.2 Multiplicity of Lawyers Generally.**

Lane Powell had 10 lawyers and 4 paralegals billing in this case.  The shear number of professionals on the case resulted in numerous communications simply to coordinate what appears to have been an unnecessary, unwieldy and duplicative performance.  The six lawyer internal meeting on June 18, 2012 at an apparent cost of $4400 is an example.

**5.3 Bankruptcy Work.**

Despite the fact that the Debtors each had principal and local bankruptcy counsel, substantial time was expended on bankruptcy related matters.  This effort was duplicative and unnecessary, but reflects the lack of restraint that characterizes the time in the claim submission.  Lane Powell filed no pleadings, joinders or briefs. in either of the two bankruptcy cases except

CLAIM OBJECTION - 11

those related to their claims.   Total time for bankruptcy work which was not within the contemplation of the employment application exceeded $21,000.

### 5.4 Bankruptcy Monitoring.

Excessive time by Lane Powell counsel is expended in monitoring, analyzing and reporting to the many other professionals in the firm about the events in the bankruptcy.

### 5.5 Tax Work.

The tax work performed by Lane Powell is obscured by their submission which places tax research and many internal conferences on tax in multiple separate matters in the submission. Alleged to be $25,940.00, the actual amount is more akin to $40,000.   Either amount was excessive and duplicative and in great part billed at higher rates than disclosed to the Court.   At one point tax advice was withheld from bankruptcy counsel pending consideration of Lane Powell's numerous conflicts.

### 5.6 Appeal.

The appeal work performed by Lane Powell expending $113,000 in lawyers time, was excessive.   The appeal effort was duplicative of other parties who had stronger grounds and both sets of appeals failed completely.   The First Amendment issues presented related to rights of other parties, not these debtors and were separately pursued.   The appeal effort (for mandamus) had a very low chance of success and would not have been authorized had the client been aware of the cost.   The statement in the application that the appeal work was a consideration and aided in the settlement reached in August, 2012 is incorrect.   Achievement of the settlement was the result of other factors.   The principal factor was the inability of the state or federal courts to change the governance of the religious body affiliated with the Tea Company and related to the litigation.   In any event the work on the appeal far exceeded any reasonable cost for the work and as stated was a complete failure.   Review of the time records reveals significant duplication of effort and inefficiencies in brief writing and endless revisions, research and review by multiple counsel.

CLAIM OBJECTION - 12

**5.7 Fee Application.**

The $31,000 for fee application work is completely unjustified and far in excess of the standard in bankruptcy cases. Further, the time records reflect substantial time in dealing with waiver of conflicts of interest which are not specifically identified and will be better understood with discovery. Further, there is substantial time spent preparing for interim fee applications payment which were never submitted.

**5.8 Employment Application.**

Time on the fee application submission alone shows a final entry on June 26, 2012. At that time the entries for the fee applications had accumulated to $12,300.

**5.9 No Payment Applications.**

Lane Powell's employment was approved in EWTC. Time records indicate that preparation of interim payment applications commenced immediately on June 27, 2012. Time records for efforts to prepare, discuss and submit interim fee applications consumed the remainder of the $31,047.50 (or $18,750) claimed in employment and payment efforts. Of course had the interim fee applications been submitted, the client would have been aware of the accumulating fees and could have exercised the informed supervision over the legal efforts of the Lane Powell firm as contemplated by the Oregon Rules of Professional Conduct.

**5.10 Payment Protocol.**

Payment of Lane Powell pre filing and payment of bankruptcy counsel in large part was sourced from the insurance trust accounts held at Lane Powell. Until that last distribution of those funds in 2013, funds were available for payment of interim fees.

**VI. RELIEF SOUGHT.**

**6.1 Vacation and Correction of the Nunc Pro Tunc Order Entered on February 26, 2013.**

Kartar seeks reconsideration of the nunc pro tunc order entered in this case. The Motion did not seek nunc pro tunc relief for Kartar and at no time was Kartar contacted concerning the motion and he did not give Lane Powell authority to file the motion.

CLAIM OBJECTION - 13

**6.2 Claim Disallowed.**

Claim should be disallowed as a claim or as an administrative claim against either debtor entity.

Claim should be disallowed due to waiver, latches and inequitable conduct in case as to both debtors due to the failure to communicate about the work performed and the amount of the claim to the debtors or counsel at the critical stages of the case, including at time of the plan and disclosure statement submission and confirmation and at the time of submission of the administrative expenses report.

**6.3 Claim Reduced.**

In the alternative as to the claim against EWTC, the Lane Powell claims should be substantially reduced and subject to further proof and review to occur at trial, the claim against EWTC in its entirety should be reduced to $50,000.

**6.4 Loss of Priority Rights.**

The Court should rule that by its failure to assert a claim in the cases prior to the confirmation hearing Lane Powell has waived its right to treatment as an administrative claim under the Plans.  Specifically, failure to pay any allowed amount promptly upon allowance shall not constitute a default under the plan.  Any allowed claim may be paid 100% of the allowed amount as provided for unsecured creditors, but would have priority over payment to unsecured claims.

**6.5 Disallowance of Further Fees.**

The Court should disallow any further fees incurred in the filing of Lane Powell claims or pursuit of this action and any claims not specifically disclosed in the time records submitted.

**6.6 Amendment Reserved.**

Complainants reserve the right to amend this complaint in accordance with the rulings of this court and the facts determined on discovery in this case.

CLAIM OBJECTION - 14

**6.7 Additional Relief.**

The Court should award such additional relief as it deems appropriate and in the interests of justice.

DATED this 6th day of June, 2013.


FOSTER PEPPER PLLC


*/s/ Dillon E. Jackson*
Dillon E. Jackson, WSBA #1539
Pro Hac Vice
Attorneys for Debtor Kartar Singh Khalsa


JOSSELSON & POTTER

*/s/ Irving Potter*
Irving Potter OSB # 742609

Attorneys for Debtor Kartar Singh Khalsa


CLAIM OBJECTION - 15