Peter C. McKittrick, OSB No. 852816
pmckittrick@ml-llp.com
Justin D. Leonard, OSB No. 033736
jleonard@ml-llp.com
**McKITTRICK LEONARD LLP**
111 SW Columbia, Suite 1100
Portland, Oregon 97201
Telephone: 971.634.0190
Facsimile: 971.634.0250

Kenneth R. Davis, II, OSB No. 971132
davisk@lanepowell.com
Mary Jo Heston, OSB No. 030438
hestonm@lanepowell.com
Peter D. Hawkes, OSB No. 071986
hawkesp@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Joseph C. Arellano, OSB No. 801518
arellano@kwar.com
Susan E. Watts, OSB No. 773845
watts@kwar.com
**KENNEDY, WATTS, ARELLANO & RICKS LLP**
1211 SW Fifth Avenue, Suite 2850
Portland, Oregon 97204-3733
Telephone: 503-228-6191
Facsimile: 503-228-0009

Attorneys for Lane Powell PC

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re ) <br> ) <br> KARTAR SINGH KHALSA and ) <br> EWTC MANAGEMENT, LLC, ) <br> f/k/a Golden Temple Management, LLC, ) <br> ) <br> Debtors. ) | Case Nos. 12-60538-fra11 (Lead Case) and <br> 12-60536-fra11 <br> <br> (JOINTLY ADMINISTERED) |
| KARTAR SINGH KHALSA and ) <br> EWTC MANAGEMENT, LLC, ) <br> f/k/a Golden Temple Management, LLC, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> LANE POWELL PC, ) <br> Defendant. ) | Adv. No. 13-6040-fra <br> <br> LANE POWELL PC'S RESPONSE TO DEBTORS' STATEMENT OF OBJECTIONS TO CLAIM NO. 24 OF LANE POWELL PC |

PAGE 1 OF 18 -  LANE POWELL PC'S RESPONSE TO DEBTORS' STATEMENT OF
OBJECTIONS TO CLAIM NO. 24 OF LANE POWELL PC

Lane Powell PC ("Lane Powell") responds to the Statement of Objections ("Statement") brought by Debtors EWTC Management, LLC f/k/a Golden Temple Management, LLC ("EWTCM") and Kartar Singh Khalsa ("Kartar") (collectively "Debtors") as set forth below. Except as expressly admitted herein, all allegations of the Statement, including the argumentative headings to Debtors' paragraphs, are denied.

1.     In answer to the allegations contained in Paragraph 1.1 of the Statement, Lane Powell admits the allegations.

2.     In answer to the allegations contained in Paragraph 1.2 of the Statement, Lane Powell admits that EWTCM confirmed a joint plan with Kartar. In further answer to Paragraph 1.2 of the Statement, Lane Powell admits that EWTCM was at one time located in Springfield, Oregon, and at one time owned 90% of East West Tea Company, LLC ("EWTC"), but because Lane Powell is currently without sufficient information or knowledge to form a belief as to the current ownership, operations or location of EWTCM, it, therefore, denies the remaining allegations in Paragraph 1.2.

3.     In answer to the allegations contained in Paragraph 1.3 of the Statement, Lane Powell admits the allegations.

4.     In answer to the allegations of Paragraph 2.1 of the Statement, Lane Powell admits that it filed duplicate claims for compensation in the amount of $286,554.00 in fees and $1,896.96 in costs for a total of $298,450.96 in both of the Debtors' Bankruptcy Cases. By way of further answer to Paragraph 2.1 of the Statement, Lane Powell admits that the amount of fees asserted included an estimate of additional fees of $10,000.00, but estimates that the fees incurred will exceed such amounts and reserves the right to seek additional fees as well as the fee enhancement which was set forth in the Lane Powell applications for employment as approved in

the orders employing Lane Powell entered in the Bankruptcy Cases.[1] Lane Powell admits that the filed claims were not apportioned, because apportionment is neither practical nor appropriate. By way of further answer to Paragraph 2.1, the historical practice throughout the litigation referenced in paragraph 8.2 of Plaintiffs' Complaint (the "State Court Litigation") was for EWTCM to pay all of the fees incurred in the State Court Litigation as it was the primary defendant in the State Court Litigation. By way of further answer to Paragraph 2.1 of the Statement, Lane Powell denies any remaining factual allegations.

5.    In answer to the allegations of Paragraph 2.2 of the Statement, Lane Powell denies that Kartar timely objected to Lane Powell's fee claim. By way of further answer to Paragraph 2.2, Lane Powell admits that a scheduling conference was held on March 13, 2013, and that the Court directed that more specific allegations supplementing the Plaintiffs' earlier filed objections and counterclaims to Lane Powell's fee claim be filed in the form of a more specific complaint. Lane Powell further admits that at the May 17th scheduling conference the court directed the Plaintiffs to file an objection cast in the form of an adversary proceeding. Lane Powell denies all further allegations in Paragraph 2.2 of the Statement.

6.    In answer to the allegations contained in Paragraph 2.3 of the Statement, Lane Powell admits that it did amend its claim (Claim #24) for professional compensation as Special

---

[1] Both applications filed by the bankruptcy counsel for the Debtors on behalf of Lane Powell in the Bankruptcy Cases state as follows:

> To the extent that any fees that are incurred are not paid within the earlier of: (i) twelve months following their due date under the invoice terms which shall be thirty days following the date of allowance of such fees by order of the Bankruptcy Court;(ii) thirty days following the date of the Bankruptcy Court's settlement of the disputes between the parties to all litigation that Lane Powell is handling on the Debtor's behalf; or (iii) the confirmation of a Chapter 11 plan, the payment of outstanding fees will be as follows: all outstanding invoices will be paid at the rate of two times the outstanding amounts owing plus all accrued interest on such outstanding invoices but only to the extent that either (i) there is a settlement that successfully resolves all disputes; or (ii) the appeal is successful. The determination of whether the appeal has been successful, and whether all or part of the contingent payment is appropriate, will be made through a good faith discussion between Lane Powell as the Debtor's attorneys and the Debtor as client, following the ruling on appeal.

Counsel on May 24, 2013 (the "Special Counsel Fee Claim") because it had inadvertently not applied the historical 10 percent (10%) discount that it had previously granted to Debtors.

7. In answer to the allegations contained in paragraph 2.4 of the Statement, Lane Powell admits the allegations.

8. In answer to the allegations of Paragraph 3.1 and Paragraph 3.2 of the Statement, Lane Powell admits the allegations.

9. In answer to the allegations of Paragraph of 3.3 of the Statement, Lane Powell admits that on June 15, 2012, the Bankruptcy Court entered an order approving employment of Lane Powell as special counsel for EWTCM. (Case No. 12-60536 ECF No. 129.) In further answer to the allegations of Paragraph 3.3 of the Statement, Lane Powell admits that on June 27, 2012, Foster Pepper, in its role as general bankruptcy counsel for Debtor in Possession Kartar, filed the application of Lane Powell to serve as Special Counsel. In further answer to the allegations of Paragraph 3.3, Lane Powell admits that an objection to the application of Lane Powell to be employed in Kartar's bankruptcy case was filed by the "Private Plaintiffs" (identified in other pleadings as Sardarni Guru Amrit Kaur Khalsa, Avtar Hari Singh Khalsa, Guru Raj Kaur Khalsa, Gurutej Singh Khalsa and Guru Sangat Kaur Khalsa) and further admits that the State of Oregon and the "Adversary Plaintiffs" (identified in other pleadings as Sardarni Guru Amrit Kaur Khalsa, Avtar Hari Singh Khalsa, Guru Raj Kaur Khalsa, Gurutej Singh Khalsa and Guru Sangat Kaur Khalsa) filed joinders in these objections (collectively, "the Objection"). Lane Powell, however, was later informed by the Private Plaintiffs' counsel that, as a result of the settlement of the litigation in the Multnomah County Circuit Court ("State Court Litigation"), the Objection filed by Private Plaintiffs had been abandoned. (*See* Exhibit A: Emails from Joe Van Leuven dated January 29, 2013.) By way of further answer to Paragraph 3.3, Lane Powell affirmatively states that the Bankruptcy Court entered an order on February 26, 2013, granting the employment application of Lane Powell filed by the Debtor Kartar on June

27, 2012 (ECF[2] No. 388), and refused to vacate that order despite a motion by Debtors (ECF No. 401). Lane Powell denies all remaining allegations of Paragraph 3.3 of the Statement.

10. In answer to the allegations of Paragraph 3.4 of the Statement, Lane Powell admits the allegations.

11. In answer to Paragraph 3.5 of the Statement, Lane Powell admits that a global settlement of certain claims between Kartar and EWTCM and certain non-debtor entities was reached and was approved by the Bankruptcy Court after notice to creditors.

12. In answer to the allegations of Paragraph 3.6 of the Statement, the documents speak for themselves and no answer to such allegations is required.

13. In answer to the allegations of Paragraph 3.7 of the Statement, the documents speak for themselves and no answer to such allegations is required.

14. In answer to the allegations of Paragraph 3.8 of the Statement, the documents speak for themselves and no answer to such allegations is required. In further answer to Paragraph 3.8 of the Statement, Lane Powell states that the Disclosure Statement did not provide any explanation for the nature of any objection to the fee claims of Lane Powell, but merely identified them as disputed and stated further that: "If allowed such claims will be paid in full as provided in the Plan."

15. In answer to the allegations of Paragraph 3.9 of the Statement, Lane Powell admits that the Debtors filed LBF #1182 and admits that the form lists certain parties and that it did not object to the form as filed. By way of further answer to Paragraph 3.9, Lane Powell denies that the Debtors properly filed these reports as it is a debtor's duty under LBR 3020-1(a) to file such a report, and to ascertain and list all professional and administrative claims outstanding, which was not done in this case. The Debtors were aware of the scope, nature, and amount of the services that Lane Powell was providing, based on the near daily contacts between the Debtors and their representatives in regards to Lane Powell's active defense of the Debtors in

---

[2] All ECF numbers relate to the lead main case number 12-60538 unless otherwise specified.

the State Court Litigation pending before Judge Leslie Roberts ("Judge Roberts"). Lane Powell's services in the State Court Litigation benefitted the Debtors' estates and supported the Debtors' efforts to reach satisfactory settlements with the Private Plaintiffs and the Oregon State Attorney General.

16. In answer to the allegations of Paragraphs 3.10 through 3.12 of the Statement, the documents speak for themselves and no answer is required.

17. In answer to the allegations of Paragraph 3.13 of the Statement, Lane Powell admits it did not object to the confirmation of the Debtors' Joint Plan or to the approval of the Disclosure Statement or the settlement. By way of further answer to Paragraph 3.13, Lane Powell denies the allegations that Lane Powell failed to keep the Debtors and their counsel apprised of its activities in the State Court Litigation. In fact, Lane Powell had near daily contact with the Debtors' representatives concerning the nature and scope of Lane Powell's representation in relation to the State Court Litigation and as to the amount of fees being incurred. As examples, Lane Powell incorporates by reference as affirmative allegations the facts provided in its Response to Objection to Claim (ECF No. 410) and the supporting declarations (ECF Nos. 411–413), which provide a sample of the significant amounts of communication occurring between the Debtors, their counsel, and Lane Powell attorneys, including communications regarding the Special Counsel Fee Claim. As to the allegations concerning the effective date of the Debtors' Joint Plan, the document speaks for itself, and no answer to this allegation is required.

18. In answer to the allegations of Paragraph 3.14 of the Statement, Lane Powell admits it filed its Special Counsel Fee Claim timely according to the provisions of the Debtors' Joint Plan. In further answer to the allegations of Paragraph 3.14, Lane Powell denies that it failed to disclose that an order had not yet been entered approving its employment as special counsel in Kartar's bankruptcy case. In fact, Lane Powell stated on Schedule A to the Special

Counsel Fee Claim that its employment had been approved in the Debtor EWTCM's case and only requested in the Debtor Kartar's bankruptcy case.

19. In answer to the allegations of Paragraph 3.15 of the Statement, Lane Powell admits that Kartar, through his counsel, Foster Pepper, filed a document with the bankruptcy court that was titled *Withdrawal of Application for Employment of Lane Powell* PC *Nunc Pro Tunc* (the "Motion for Leave," ECF No. 377) without consulting or notifying Lane Powell, and with the knowledge that Lane Powell had continuously represented the Debtors in the State Court Litigation during the pendency of their bankruptcy cases. In further answer to Paragraph 3.15, Lane Powell affirmatively states that the Motion for Leave did not constitute an objection to the Special Counsel Fee Claim. Lane Powell further represents that, when Lane Powell was contacted by the Bankruptcy Court to submit an order employing Lane Powell as Special Counsel in Kartar's Bankruptcy Case, the bankruptcy clerk stated that the Court was aware of the Motion for Leave.

20. In answer to the allegations of Paragraph 3.16 of the Statement, Lane Powell admits it filed and uploaded the motion and order referenced, but denies that the filing and uploading of such documents was either improper or unauthorized. Lane Powell admits the upload of the order was after the filing of the Motion for Leave. Lane Powell affirmatively states that it uploaded the order based upon instructions from the Court through its clerk, and that the Court's clerk informed Lane Powell that the Court was aware of the Motion for Leave. Lane Powell further affirmatively states that the Bankruptcy general counsel for both Debtors, Winston & Cashatt and Foster Pepper reviewed the applications for employment and then filed them with the Court on behalf of Lane Powell. Presumably they talked with their clients about the content of the Lane Powell applications before they filed them on behalf of Lane Powell. Both applications clearly requested nunc pro tunc employment of Lane Powell. Lane Powell denies the remaining allegations of Paragraph 3.16.

21. In answer to the allegations of paragraph 3.17 of the Statement, Lane Powell admits that the Debtors filed objections to its Special Counsel Fee Claim, but asserts that such objections were not timely filed. Lane Powell denies that such objections were "supplementing" the Motion for Leave, and points out that the Motion for Leave occurred only in Kartar's case. Any objection to the Special Counsel Fee Claim by EWTCM, therefore, is undeniably late and should be dismissed.

22. In answer to the allegations of Paragraph 3.18 of the Statement, Lane Powell states that the documents and their current status as filed with the Court speak for themselves and the allegations are not directed at Lane Powell, so no answer is required.

23. In answer to Paragraph 3.19, Lane Powell admits that it filed a claim for prepetition services and that such claim was settled through the filing of a stipulated order. (ECF No. 428.) This document speaks for itself and no further answer of the allegations of Paragraph 3.19 is required. To the extent an answer to Paragraph 3.19 is required, Lane Powell denies the allegations set forth in Paragraph 3.19.

24. In answer to the allegations of Paragraph 3.20, Lane Powell admits the allegations.

25. In answer to the allegations of Paragraph 4.1 of the Statement, Lane Powell admits that it represented EWTCM and Kartar as well as other defendants in the State Court Litigation. By way of further answer to Paragraph 4.1, Lane Powell admits that it represented EWTC in certain litigation, including, but not limited to litigation involving the cereal division of EWTC and intellectual property disputes brought by Bibiji Inderjit Kaur Puri ("Bibiji"). Lane Powell further admits that it represented EWTC in certain litigation.

26. In answer to the allegations of Paragraph 4.2 of the Statement, Lane Powell admits that when its clients in the State Court Litigation began taking different positions on settlement issues in connection with the State Court Litigation, Lane Powell informed its clients that they should obtain separate counsel for the limited purpose of representation on such

settlement matters. Lane Powell further admits that its clients in the State Court Litigation thereafter employed Josselson & Potter (to represent the non-settling defendants) and Parsons, Farnell and Grein, LLP (to represent the settling defendants) for the limited purpose of representing these defendants in the settlement negotiations, and Lane Powell continued to represent its clients in the State Court Litigation. By way of further answer to Paragraph 4.2 and based on the participation of Josselson & Potter and Parsons, Farnell and Grein, Lane Powell did not participate in many of the mediation sessions with Judge Michael Hogan, except insofar as it was asked to provide advice on matters such as tax issues related to proposed settlements of the State Court Litigation. As to the remaining allegations of Paragraph 4.2, Lane Powell is without sufficient knowledge or information to form a belief as to such allegations and, therefore, denies such allegations.

27.     In answer to the allegations of Paragraph 4.3 of the Statement, Lane Powell admits that it disclosed various representations in its application for employment as special counsel, but denies that it did not adequately disclose any conflicts of interest in the Bankruptcy Cases. By way of further answer to Paragraph 4.3, Lane Powell denies that its prior representation of EWTCM (fka GTM) in the 2007 transaction was a conflict of interest in connection with its representation of the Debtors as Special Counsel, particularly in light of the separate representation of these parties by the other counsel representing them in settlement negotiations as noted in Paragraph 4.2 of the Statement and Paragraph 26 of this answer.

28.     By way of answer to Paragraph 4.4 of the Statement, Lane Powell admits that it obtained conflict waivers, that it disclosed the issues related to the conflict waivers in its application, and that it did not attach the conflict waivers to its application. By way of further answer to Paragraph 4.4, Lane Powell asserts that at no time prior to submission of its Application did the Debtors or their other attorney representatives claim that such an alleged conflict of interest existed. Lane Powell denies the remaining allegations contained in Paragraph 4.4 of the Statement.

29.　In answer to the allegations of Paragraph 4.5 of the Statement, Lane Powell admits that it declined to give advice on occasion to one or more of the Debtors based upon the allocation of responsibilities related to settlement of the State Court Litigation to other counsel noted above in Paragraph 26 of this Answer.  Lane Powell denies any remaining allegations set forth in Paragraph 4.5.

30.　In answer to the allegations of Paragraph 4.6 of the Statement, Lane Powell admits its attorneys did not attend many of the mediation sessions, but denies the remaining allegations, particularly the allegation that its continued representation of the Debtors did not materially contribute to the settlement of the State Court Litigation that was approved by the Bankruptcy Court.  Debtors and their litigation and settlement counsel repeatedly expressed that pursuit of the State Court Litigation was an essential aspect of reaching a favorable settlement with the Private Plaintiffs and the Oregon State Attorney General of the matters involved in the State Court Litigation.  If the Debtors believed that the continued defense of the State Court Litigation by Lane Powell was not in the best interests of the Debtors' estates, they or their general bankruptcy counsel should have instructed Lane Powell to stop defending such State Court Litigation, which they did not do.

31.　In answer to the allegations of Paragraph 4.7 of the Statement, Lane Powell admits it was a named defendant in a federal district court lawsuit by Bibiji, et al., pending under case number 3:10-cv-01532MO before Judge Michael Mosman (the "Bibiji Litigation"), along with Kartar, in an amended complaint filed on March 13, 2012, after Lane Powell obtained dismissal of the original complaint for failure to state a claim for relief.  By way of further answer to Paragraph 4.7 of the Statement, Lane Powell admits it disclosed the claims asserted in the Bibiji Litigation in the employment applications filed in the Bankruptcy Cases.  By way of further answer to Paragraph 4.7 of the Statement, Lane Powell denies that it had a conflict of interest arising from this disclosed fact, and further asserts that it obtained a conflict waiver from its clients in connection with the filing of the aforementioned claim in the Bibiji Litigation.

Notwithstanding the express waiver from the Debtors themselves, if other bankruptcy counsel for the Debtors, who were fully aware of the filing of the claims in the Bibiji Litigation against both Lane Powell and Kartar, believed that there was a conflict of interest that arose from the asserted claim against Lane Powell in the Bibiji Litigation, they had a duty to raise this issue with both Lane Powell and the Bankruptcy Court, which they did not do. Lane Powell further denies that it billed time to the Debtors for the work to obtain a dismissal of Lane Powell from the Bibiji Litigation. To the contrary, Lane Powell had a separate billing number for this work and hired independent counsel to provide defense services to Lane Powell in connection with the claims brought against it in the Bibiji Litigation.

32. In answer to the allegations of Paragraph 4.8 of the Statement, Lane Powell admits the second sentence of Paragraph 4.8 but denies the first sentence that it was not employed in Kartar's Bankruptcy Case and denies the third sentence that all time accrued and claimed was directed at EWTCM. Both Debtors benefited from the services provided by Lane Powell.

33. In answer to the allegations of Paragraph 4.9 of the Statement, Lane Powell admits it did not allocate its time representing the Debtors in the State Court Litigation because allocation among its clients in the State Court Litigation was not practicable and Lane Powell's services benefitted both Debtors equally. As previously noted, in keeping with historical practices which had never been objected to by the Debtors or their other professionals, Lane Powell expected to be paid by the primary defendant in the State Court Litigation, EWTCM. Lane Powell further admits that it did not send bills to Kartar for this reason.

34. In answer to the allegations of Paragraph 4.10 of the Statement, Lane Powell denies the allegations set forth in Paragraph 4.10.

35. In answer to the allegations of Paragraph 4.11 of the Statement, Lane Powell denies the allegations. By way of further response to Paragraph 4.11, Lane Powell affirmatively states that it did not bill time to the Debtors in representing its own interests. Lane Powell further

affirmatively states that it wrote off over $23,000.00 in fees on work it performed that it perceived as duplicative of other counsel's efforts or that it determined was not appropriate to bill to the Debtors. Lane Powell further affirmatively states that, since the filing of the Special Counsel Fee Claim Lane Powell discovered that an additional approximately $9,000 in defense of Kartar which had been billed to a separate non-bankruptcy file was inadvertently left off of the Special Counsel Fee Claim.

36.     In answer to the allegations of Paragraph 4.12 of the Statement, Lane Powell states that there are certain retention letters that address the payment responsibilities of EWTCM and the other defendants, and the respective payment responsibilities of EWTC. Lane Powell denies the remaining allegations of Paragraph 4.12.

37.     In answer to the allegations of Paragraph 4.13 of the Statement, Lane Powell admits the prepetition bills were addressed to the Debtor EWTCM as had been directed by EWTCM and EWTCM had historically paid all fees. Lane Powell further affirmatively avers that while the bills were directed to and paid by EWTCM, both Debtors benefitted from the services provided by Lane Powell. Lane Powell denies any remaining allegations in Paragraph 4.13.

38.     In answer to the allegations of Paragraph 4.14 of the Statement, Lane Powell denies the allegations set forth therein. Further, Lane Powell affirmatively states that its attorneys were in continual communication with the Debtors and their other counsel regarding the significant work and issues that Lane Powell attorneys were performing and addressing during the pendency of the Bankruptcy Cases, as well as the amount of the fees being incurred. Particularly, Lane Powell sent a statement of its services from the Petition date through July 31, 2013, to EWTCM on August 16, 2012, which was in the amount of $199,974.14.

39.     In answer to the allegations of Paragraph 4.15 of the Statement, Lane Powell admits it had performed substantial services to the Debtors, but denies that the Debtors were unaware of the extent of those services or the amount of the fees accrued in light of the continual

and frequent communication between Lane Powell and the Debtors. Lane Powell also denies any remaining allegations of Paragraph 4.15.

40. The allegations contained in Paragraph 4.16 of the Statement include asserted conclusions of law and, therefore, Lane Powell has no duty to respond. By way of further answer to Paragraph 4.16, Lane Powell asserts that to the extent a response is required, Lane Powell admits that it is subject to the duties imposed by the Oregon Rules of Professional Conduct and denies it has failed to comply with such duties.

41. In answer to the allegations of Paragraph 4.17 of the Statement, denies the allegations and asserts that the statements made in Paragraph 4.17 are known to the Plaintiffs and their counsel to be false based on records already produced by Lane Powell in response to these spurious allegations in prior pleadings and documents provided to Plaintiffs by Lane Powell in discovery and the Plaintiffs' personal knowledge. By way of further answer to Paragraph 4.17 Lane Powell attorneys, particularly Mr. Horowitz did not bill for many of the communications between Lane Powell and the Debtors concerning the status and strategy concerning the State Court Litigation and related matters.

42. In answer to the allegations of Paragraph 4.18 of the Statement, Lane Powell denies the allegations.

43. In answer to the allegations of Paragraph 4.19 of the Statement, Lane Powell admits that when it separated its billing entries into categories for the Special Counsel Fee Claim, it inadvertently failed to apply the ten percent (10%) discount on the total fees that it agreed to provide to the Debtors which generally was applied on the total invoice at the end and not on specific entries. Lane Powell has remedied this oversight by amendment. By way of further answer to Paragraph 4.19, Lane Powell affirmatively states that the employment application does not preclude other attorneys from working for the Debtors, but provides those listed would be the professionals primarily responsible. By way of further answer to Paragraph 4.19, Lane Powell

denies that this oversight constituted a violation of representations to the Court and denies all remaining allegations in Paragraph 4.19.

44. The allegations of Paragraph 4.20 of the Statement include asserted conclusions of law and, therefore, Lane Powell has no duty to respond. By way of further answer to Paragraph 4.20, Lane Powell states that 11 U.S.C. § 330 ("Section 330") speaks for itself and no response is required. By way of further answer to Paragraph 4.20, Lane Powell asserts that to the extent a response is required to any of the allegations, Lane Powell denies the allegations in that its services rendered to the Debtors met the requirements of Section 330.

45. The allegations of Paragraph 4.21 of the Statement include asserted conclusions of law and, therefore, Lane Powell has no duty to respond. By way of further answer to Paragraph 4.21, Lane Powell denies that the Statement is well taken and therefore precludes Lane Powell's receipt of its fees in defending its Special Counsel Fee Claim. Given that several of the allegations in the Statement are spurious based on knowledge of the Debtors and their other counsel, Lane Powell should be entitled to all of its fees in defending itself against such claims.

46. The allegations in the introductory paragraph of Section V of the Statement contain allegations not directed at Lane Powell and, therefore, impose no duty to respond. To the extent that a response is required, Lane Powell denies the allegations.

47. In answer to the allegations of Paragraph 5.1 of the Statement, Lane Powell denies that its attorneys performed duplicative tasks or tasks that were otherwise unnecessary in any hearings. The only example Debtors have provided is a hearing for 1.2 hours that Mr. Horowitz and Mr. Davis attended. Mr. Horowitz is a tax attorney and Mr. Davis is a litigator. Lane Powell reserves the right to respond further to such allegations concerning duplication of efforts if Debtors identify specific instances that they assert are objectionable.

48. In answer to the allegations of Paragraph 5.2 of the Statement, Lane Powell denies that it improperly included too many attorneys to assist the Debtors and represent them in

the State Court Litigation. By way of further answer to Paragraph 5.2 of the Statement, Lane Powell affirmatively states that given the complexity of the State Court Litigation, the number of attorneys involved in the work was appropriate under the circumstances. More specifically, Lane Powell affirmatively states that these attorneys were necessary to respond to the many and immediate demands required as a result of the State Court Litigation, to assist the Debtors' bankruptcy counsel in filing a removal of the State Court Litigation, to pursue a writ of mandamus and appeal of orders issued in the State Court Litigation, and to assist and facilitate the settlement of the State Court Litigation and other claims. Lane Powell denies the remaining allegations of Paragraph 5.2.

49. In answer to the allegations of Paragraph 5.3 of the Statement, Lane Powell denies that the time spent on bankruptcy matters was duplicative or unnecessary. Lane Powell admits that, except for the notice of removal that Debtors' bankruptcy counsel directed that Lane Powell file and pleadings related to its employment, Lane Powell did not file other pleadings nor was it asked by other counsel to file any other pleadings in the Bankruptcy Cases. Lane Powell further admits that both Debtors had independent bankruptcy counsel. By way of further answer to Paragraph 5.3, denies the remaining allegations of Paragraph 5.3.

50. In answer to the allegations of Paragraph 5.4, Lane Powell denies the conclusory allegations and requests a more definite statement, and reserves the right to respond when such specific statement is received. By way of further answer to Paragraph 5.4, Lane Powell asserts that the time Lane Powell spent on bankruptcy matters was either at the request of the Debtors' bankruptcy counsel or was necessary to its work in relation to the State Court Litigation.

51. In answer to the allegations of Paragraph 5.5 of the Statement, Lane Powell acknowledges that the tax work performed by Lane Powell specifically included categories designated in its Application. By way of further answer to Paragraph 5.5 of the Statement, Lane Powell denies any remaining allegations of Paragraph 5.5 and notes that multiple lawyers were needed because many issues involving tens of millions of dollars in tax needed to be addressed in

a very brief time, with time entered on multiple tasks and files reflecting an attempt to allocate the time in accordance with the correct file. Lane Powell further affirmatively states that Lane Powell provided Debtors with a timely and valuable tax analysis of the settlement provisions as well as all other tax matters relevant to EWTCM and its members as they matters arose. When a draft of the settlement agreement was circulated, which referenced the pursuit of a suit against Lane Powell, Lane Powell asked for clarification of the provision, and it advised that if the settlement contemplated the mandatory pursuit of a suit against Lane Powell then Lane Powell would not be able to continue providing the requested tax advice. Upon assurances that the provision relating to suit against Lane Powell would be removed from the settlement agreement, Lane Powell provided the advice that was essential to the successful settlement of the State Court Litigation. The delay arising from these discussions was less than one hour and in no way harmed the Debtors or the settlement efforts. When the final settlement agreement was circulated the provision concerning a suit against Lane Powell was reinserted into the settlement agreement, contrary to the prior repeated written representations of the Debtors and their counsel to Lane Powell. Upon the later inquiry about the provision Lane Powell was informed by the Debtors that the inclusion of this provision in the final agreement was an oversight (notwithstanding that the provision had been removed from intermediate drafts).

52.     In answer to the allegations of Paragraph 5.6 of the Statement, Lane Powell denies the allegations. At all relevant times, the Debtors, as well as their counsel, were accurately informed of the scope, nature, and amount of the work Lane Powell was doing on the various appeals and mandamus actions, as well as the likelihood of prevailing on such actions. Debtors and their counsel approved of all such filings.

53.     In answer to the allegations of Paragraph 5.7 of the Statement, Lane Powell denies the allegations. By way of further answer to Paragraph 5.7, Lane Powell notes that it included a total of 4.6 hours and $1,696 in fees in the Special Counsel Fee Claim related to

addressing conflict waiver issues, primarily those arising in connection with the suit brought by Bibiji, and denies that such time expended was "substantial."

54.   In answer to the allegations of Paragraph 5.8 of the Statement, Lane Powell denies the allegations.

55.   In answering the allegations of Paragraph 5.9 of the Statement, Lane Powell admits that its employment application was approved in the Debtor EWTCM's case and affirmatively states it was approved in the Debtor Kartar's case.  Lane Powell further admits it prepared fee applications.  The last sentence of Paragraph 5.9 is a legal conclusion to which no response is required.  Lane Powell affirmatively states that any interim fee applications were not submitted based upon the Debtors' counsel's failure to coordinate such submission, and the Court's stated preference to postpone the Lane Powell employment issues until other issues, such as settlement and plan confirmation, had been resolved.  All remaining allegations in Paragraph 5.9 are denied.

56.   In answering the allegations of Paragraph 5.10 of the Statement, Lane Powell admits the allegations.

57.   In answering the allegations of Paragraph 6.1 of the Statement, Lane Powell admits the Debtor Kartar seeks reconsideration of the Court's Order denying his attempt to unilaterally withdraw the Lane Powell application, but denies the Debtor Kartar is entitled to such relief.  Lane Powell has clearly explained the facts of its nunc pro tunc appointment in both bankruptcy cases and incorporates by reference that response.  (*See* ECF No. 446.)  Lane Powell denies all remaining allegations of Paragraph 6.1.

58.   The allegations in Paragraphs 6.2 through 6.7 of the Statement state legal conclusions to which no response is required.  To the extent a response is required, Lane Powell denies the allegations and denies Debtors are entitled to such relief.

## ADDITIONAL DEFENSES

59. The Statement fails to state any facts sufficient to constitute any claim for relief, is barred by the doctrines of waiver, laches and estoppel, and is time barred.

60. The Debtors' objection was not timely and should be stricken by the Court. Lane Powell filed its application for final compensation on January 28, 2013. The Debtors did not file their initial objection until twenty-nine (29) days later on February 26, 2013 and even then such initial objection was improperly filed and was re-filed on February 29, 2013. The Federal Rules of Bankruptcy Procedure require that any objections to applications for compensation be filed within twenty-one (21) days, plus three days for mailing. The Debtors filed their objection beyond the deadline and the objections should be denied as untimely.

WHEREFORE, Lane Powell hereby requests that the Court enter an order:

1. Overruling Debtors' objections and allowing in full Lane Powell's fees and costs incurred in service to the Debtors as special counsel in the Bankruptcy Cases, in the total discounted amount of $259,795.56, as well as its fee enhancement as set forth in the applications (*i.e.* 2X the allowed amount of the fees), to be paid pursuant to the Joint Plan in full;

2. Granting Lane Powell recovery of its attorneys' fees and costs in defending its Special Counsel Fee Claim; and

3. Granting Lane Powell such other relief as is just and reasonable.

DATED:  June 26, 2013

McKITTRICK LEONARD LLP

By /s/ Justin D. Leonard
    Peter C. McKittrick, OSB No. 852816
    Justin D. Leonard, OSB No. 033736

LANE POWELL PC
    Kenneth R. Davis, II, OSB No. 971132
    Mary Jo Heston, OSB No. 030438
    Peter D. Hawkes, OSB No. 071986
    Skyler M. Tanner, OSB No. 101589

KENNEDY, WATTS, ARELLANO & RICKS LLP
    Joseph C. Arellano, OSB No. 801518
    Susan E. Watts, OSB No. 773845

Attorneys for Defendant Lane Powell PC

# CERTIFICATE OF SERVICE

      I certify that on the date below, I caused notice of the filing of **LANE POWELL PC'S RESPONSE TO DEBTORS' STATEMENT OF OBJECTIONS TO CLAIM NO. 24 OF LANE POWELL PC** to be served on interested parties requesting notice through the Court's CM/ECF system, as well as by first class U.S. mail on the following interested parties requesting notice by mail:

NONE

DATED: June 26, 2013.

                                                   By: /s/ Justin D. Leonard
                                                           Justin D. Leonard, OSB 033736